## Federal Life Insurance Company v. Warren.

(Decided January 14, 1916.)

### Appeal from Webster Circuit Court.

1. Insurance—Life Insurance—Acceptance of Note.—If a life insurance company, at the date a premium is due, accepts from the policy holder a note therefor, bearing interest, which recited that it was given as evidence of the extension of time of payment of the premium, and the non-payment of the note when due will void the policy without notice, retains the note after it became due and treats it as an indebtedness against the policy. the note will be deemed a payment of that premium.

2. Insurance—Life Insurance—Options.—Where a life insurance policy gives to a policy holder the option, after paying so many premiums, to receive either a paid up policy for a certain amount, or to receive a specified amount as the cash value thereof, and

thereafter provides that any indebtedness on account of the policy will correspondingly reduce its surrender value specified in the table, if the policy holder elects to take a paid up policy, the amount of the paid up policy will be such an amount as the cash surrender value after deducting therefrom the amount of his indebtedness will purchase in the proportion specified in the policy.

3.  Insurance—Life Insurance—Lapse of Policy—Dividends.—Where the policy undertakes to pay at the death of the assured while the policy is in force, certain sums in addition to the face of the policy in the form of dividends, the policy naving lapsed within the period named, no question of dividends is presented.

DORSEY & DORSEY and C. A. ATKINSON for appellant.

GIVENS DIXON for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

On the 4th of August, 1904, the Inter-State Life Assurance Company of Indiana issued to appellee a policy on his life called a twenty-year-cash-return policy. At the date of the policy appellee was forty-one years of age, but it was ante-dated five years so that he might have the benefit of the rate at the age of thirty-six, and the insurance began under the terms of the contract at that date.

Thereafter the policy was assigned to and its obligations assumed by appellant, Federal Life Insurance Company.

Simultaneously with the issual of the policy on August 4th, 1904, the Inter-State Life Assurance Company loaned to appellee $261.20 with interest at the rate of five per cent. payable annually, which loan was a lien on the policy.

The annual premiums on the policy were paid up to the 4th of August, 1912, at which time appellant accepted from appellee his note payable in five months thereafter with interest at five per cent. with the recitation therein that it was given as evidence of the extension of time of payment of the annual premium due on the policy at that time, and that the non-payment of the note when due would void the policy without notice except as otherwise provided in the policy.

Neither of these notes having been paid either in whole or in part, in November, 1913, appellee brought this suit to require appellant to issue to him a ''paid up'' policy of insurance under the terms of the contract,

and the only question in the case is as to the amount of the "paid up" policy to which he is entitled.

The lower court entered a judgment directing the appellant to issue a "paid up" policy of $913.73 payable at the death of appellee, and from that judgment this appeal is prosecuted.

At the expiration of the thirteenth year the company took appellee's note, payable in five months, for the amount of the 14th premium with the recitation hereinabove given; but upon the failure to pay the same on its maturity the company did not return the note to him, but retained the same and still held it when this suit was filed in November, 1913, thereby treating it as an indebtedness against the policy. So that treating that note as the payment of the 14th premium the policy lapsed for non-payment of premium at the expiration of the 14th year on the 4th of August, 1913. Sou. Mutual Life Ins. Co. v. Montague, 84 Ky., 655; Montgomery v. Phoenix Mutual Life Ins. Co., 14 Bush, 58.

Appended to the policy in this case is a table of loans and of surrender values either in cash or its equivalent in extended or paid up insurance, and that table shows that at the end of the 14th year the cash value of the policy was $660.20, and that $1,400.00 was the amount of the "paid up" life policy to which appellee was then entitled if the policy lapsed for non-payment of premium and he elected to accept a "paid up" policy. Immediately following this table there is in the policy the following language, to-wit:

"Any indebtedness on account of this policy outstanding at the time of settlement as provided by the terms of paragraph 7 of Privileges and Conditions will correspondingly reduce the surrender value specified in the above table."

The paragraph 7 of Privileges and Conditions referred to in the last quotation is as follows:

"If this policy shall become void by the violation of any stipulation or agreement, all payments made or accepted hereon shall be retained by and shall belong to the company, except that if after three full years' premiums shall have been paid on this policy, it shall cease or become void solely by the non-payment of any premium when due, the owner will be entitled, on legal surrender of this policy within thirty days thereafter,

to one of the methods of settlement provided in the table below at the date of surrender, as follows:

"1. Receive a non-participating paid up life policy for the amount specified in the said table; or,

"2. Receive the amount specified in the said table as the cash value of this policy."

From these provisions it will be seen that when the policy lapsed appellee had the election either to accept the cash surrender value, as shown by this table, of $660.20 or to accept a "paid up" life policy for $1,400.00, but in either instance his indebtedness to the company must first be satisfied. That is to say that if he had not been indebted to the company on the 4th day of August, 1913, when the policy lapsed, he would have been either entitled to the cash surrender value thereof of $660.20, or a "paid up" policy of $1,400.00.

He, having elected to take a "paid up" policy, now contends that the amount of his indebtedness to the company should be taken from the $1,400.00 and a "paid up" policy for the balance issued to him, while the company contends that the amount of his indebtedness should be subtracted from the $660.20 and the balance applied to the purchase of "paid up" insurance for him in the proportion shown by the table; that is to say that if the $660.20 cash surrender value on the 4th of August, 1913, would purchase $1,400.00 in "paid up" insurance that the balance of the $660.20 after deducting the amount of appellee's indebtedness should be applied to the purchase of "paid up" insurance in the same proportion and for that amount a "paid up" policy issued to him.

The provision in the policy that any indebtedness on account thereof, "will correspondingly reduce the surrender value specified in the above table," clearly had reference to the cash surrender value and not to the amount of "paid up" insurance to which the assured might be entitled upon his election.

The whole table shows that it is made up from and based upon calculations showing the difference between parting with the cash money at a stated period, and the payment of another and greater sum at a later period estimated under the life tables as the assured's life expectancy, and the having by the company of the use of that money for the length of time between the cash payment and the expiration of the life expectancy; in other

words that $1,400.00 at the expiration of appellee's life under their calculation would be the equivalent to them of the payment of $660.20 on the 4th of August, 1913.

Appellee's argument throughout seems to take no account of the fact that a settlement by the company on a cash surrender basis contemplates the payment by it of the money *at that time,* while the issual of a "paid up" policy at that time contemplates the payment of a given amount at the time of the death of the assured. In the one case the assured has the use of the money during the remainder of his life, and in the other case the company has. The company's contract is doubtless based upon a calculation that the use of the money for the balance of the assured's life is worth as much to it as the difference between the cash surrender value and the amount of the paid up insurance.

Suppose on the 4th day of August, 1913, the date the policy lapsed, appellee had been indebted to the company in the sum of $660.20, the exact amount of the cash surrender value of his policy based upon the premiums he had paid, his contention in this case would lead to the result that he would be entitled to have his debt which he owed the company cancelled and also have in addition a "paid up" policy issued to him for the difference between the $660.20 and the $1,400.00; that is to say that although by reason of his indebtedness to the company the cash surrender value of his policy was extinguished entirely, yet, in addition to that he would be entitled to a "paid up" policy for $739.80 for which he had paid nothing. To state this proposition is sufficient to show that no such interpretation of the policy could have been contemplated.

The pleadings in this case do not allege facts authorizing us to consider the question of dividends, and if they did, it is apparent from the provisions of the policy that no such claim could be maintained, for there is no undertaking by the policy to pay more than the $2,000.00, the amount thereof, except upon the death of the assured within twenty years from August 4th, 1899, while the policy is in force, in which event the company promises to pay to the beneficiary in addition to the $2,000.00 certain amounts specified in the table referred to; and as the policy has lapsed and is no longer in effect no question of dividends arises. Jefferson v. N. Y. Life Insurance Company, 151 Ky., 609.

The judgment is reversed with directions to deduct the amount of appellee's indebtedness as of the 4th of August, 1913, from the $660.20 and issue a paid up policy for such amount as the balance will purchase under the table referred to.